IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DANIEL FOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-00526-CV-W-BP |
| ) | |
| BOARD OF POLICE COMMISSIONERS ) | |
| OF KANSAS CITY, MISSOURI, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER AND OPINION GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Daniel Fox filed this suit against the Board of Police Commissioners of Kansas City, Missouri, (the "Board"), Captain James Gottstein, Sergeant William Majors, and Officer David Kissee. (Doc. 8.) Defendants have filed a Motion to Dismiss, (Doc. 12), which is **GRANTED**.

**I. BACKGROUND**

Plaintiff alleges that early in the morning on July 15, 2022, he called the police because he observed signs that someone had broken into (and was still inside) his neighbor's house. (Doc. 8, ¶¶ 17-18.) Two officers responded, walked around the neighbor's house, and spoke with Plaintiff. (Doc. 8, ¶¶ 19-20.) Then, without entering the neighbor's house or conducting further investigation, the officers left. (Doc. 8, ¶ 21.) Plaintiff called the police department (the "KCPD") to find out why more was not done, and one of the responding officers called back shortly thereafter and "informed Plaintiff that they could not do anything more because 'their hands were tied.'" (Doc. 8, ¶ 22.)

Later that morning, Plaintiff posted a video on his Twitter account describing the morning's events and expressing concern for his safety. He also "questioned the apparent KCPD policy of inaction in these situations." (Doc. 8, ¶ 25.) He concluded his Twitter video by "ask[ing] that the matter be brought to the attention of the right person in the Mayor's office or the KCPD to help him understand the inaction." (Doc. 8, ¶ 26.)

That night, Plaintiff received a call from Captain Gottstein, who left the following message:

Hi Mr. Fox, if this is your number, my name is James [unintelligible], I'm the watchman captain at Metro Patrol. You posted something on Twitter begging for attention, so I was calling you back to try to explain to you our procedures our limitations that have been placed upon us since the 4th amendment ruling concerning Eric DeValkenaere that was passed down like last year that strictly limited our ability to go on private property without owner consent or without vast vast knowledge on something happening like someone screaming for help inside. We no longer search abandoned houses without a warrant from a judge to go in, it strictly limited our ability to provide the public with safety and that's something you citizens need to know. That ruling had a direct impact on what we can do. Which is affecting you and I don't agree with it, we should be able to meet your need[.] We should be able to go into a house that's next to you to keep you safe but we no longer do that because if we go in there and somebody be in there that belongs in there for some reason ya know maybe one of the college students is back and he aims a gun and we shoot at him then we are gunna be brought up on charges so we have to be very careful on how we proceed on those things.

But if you want to call me back this is my work number. I'm also going to have a sergeant contact you tonight who is a supervisor of those officers I believe. To talk to you also. Umm

I'm sorry you had that experience, but many citizens are going to have that same experience but it's kind of out of the police's hands until that judgment is overturned on appeal so that we can go back to our business to keep citizens safe, you take care buh-bye."

(Doc. 8, ¶ 27 (all spelling and punctuation as in original).)

Approximately ninety minutes later, Sergeant Majors and Officer Kissee arrived "and parked in front of Plaintiff's home with the lights on their patrol vehicle activated." (Doc. 8, ¶ 30.)

2

"Sergeant Majors wore a tactical chest adorned with weapons," and when Plaintiff's wife answered the door he and Officer Kissee explained "that they wanted to 'stop by and talk to'" Plaintiff. (Doc. 8, ¶¶ 31-32.) During the encounter Sergeant Majors's hand was "close to the gun on his right hip," which made Plaintiff's wife nervous. (Doc. 8, ¶ 33.) When he departed, he left his business card with Plaintiff's wife and asked that Plaintiff contact him. (Doc. 8, ¶ 34.)

Plaintiff alleges the following aspects of these events made him feel "threatened, unsafe, and intimidated":[1]

- The statement in Captain Gottstein's voicemail that Plaintiff was "begging for attention,"
- Captain Gottstein's suggestion that the police cannot keep Plaintiff or other citizens safe unless the ruling in the DeValkenaere case is changed,
- Defendants' failure to treat Plaintiff's Twitter post as a formal complaint or tell him how to make a formal complaint, and
- Sergeant Majors and Officer Kissee visiting
    - At a late hour,
    - Without confirming in advance they could visit,
    - With their patrol car's lights activated,
    - With Sergeant Majors wearing tactical gear, and
    - With Sergeant Majors keeping his hand close to his gun.

---

[1] It does not appear Plaintiff was present when Sergeant Majors and Officer Kissee visited. In light of the Court's holding, there is no need to discuss whether Plaintiff can allege he felt threatened based on acts that caused his wife to feel threatened.

(Doc. 8, ¶ 39).[2] Plaintiff believed Defendants took these actions in response to his critical Twitter post, so he deleted it and any other posts he may have made referencing the KCPD. (Doc. 8, ¶¶ 40-42.)

The Second Amended Complaint asserts the following claims pursuant to 42 U.S.C. § 1983:

    Count I        Violation of Plaintiff's First Amendment rights,

    Count II       Retaliation against Plaintiff for exercising his First Amendment rights, and

    Count III      Conspiracy to violate Plaintiff's First Amendment rights.[3]

The individual defendants seek dismissal, contending (1) they did not violate Plaintiff's First Amendment rights and (2) even if they did, they are entitled to qualified immunity. The Board also seeks dismissal, contending (1) it cannot be liable if none of the individual Defendants are liable and (2) Plaintiff has not alleged the existence of an unconstitutional policy, custom, or pattern of conduct. Plaintiff opposes dismissal, and the Court resolves the parties' arguments below.

## II. DISCUSSION

Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

---

[2] Plaintiff also mentions the officers' failure to take further action when initially responding to his burglary report, but this occurred before Plaintiff posted his video on Twitter so their actions could not have been retaliatory. (*See also* footnote 3, *infra*.)

[3] Count IV seeks injunctive relief and does not assert an independent claim for relief. Regardless, to the extent Plaintiff seeks an injunction to change Defendants' practices regarding burglary investigations, (*see* Doc. 8, ¶¶ 81-90), such relief would not be justified by the alleged violation of Plaintiff's First Amendment rights.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

## A. The Individual Defendants

Counts I and II are, as Plaintiff confirmed at oral argument, related. Count I alleges Defendants "threaten[ed] and intimidate[d] Plaintiff into deleting his Twitter posts[, which] had the effect of chilling his speech and violated the First Amendment . . . ." (Doc. 8, ¶ 52.) Count II alleges "Defendants responded to Plaintiff's constitutionally protected activity by retaliating against him [by] threaten[ing] and intimidat[ing] him into deleting his" Twitter post. (Doc. 8, ¶ 60.) As Plaintiff explained, the allegations were divided into two counts to "capture" the effects of Defendants' conduct on both Plaintiff's past speech and future speech. However, Plaintiff seemed to agree both claims are analyzed the same under the law. (*See also* Doc. 17, pp. 8-13 (Plaintiff defending both claims with the same arguments and cases).)

The Court also accepts Plaintiff's invitation to consider his allegations in combination instead of on a Defendant-by-Defendant basis. (Doc. 17, pp. 10-11.) Counts I and II require

5

separate consideration of each individual Defendant's actions, but Count III alleges the parties conspired with each other, so in the interest of expediency the Court will consider the actions *en toto* instead of on an individualized basis.

Finally, the Court must consider the Individual Defendants' assertion of qualified immunity. "Qualified immunity only applies to claims against public officials in their individual capacities." *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)). It "protects governmental officials from liability for civil damages if they have not violated clearly established statutory or constitutional rights of which a reasonable person would have known. The qualified immunity doctrine provides protection to all but the plainly incompetent or those who knowingly violate the law. It allows officers to make reasonable errors." *Clayborn v. Struebing,* 734 F.3d 807, 808 (8th Cir. 2013) (cleaned up). A state official is protected by qualified immunity unless he (1) violated a statutory or constitutional right that was (2) clearly established at the time of the challenged conduct. *E.g., Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). The Court has discretion to decide whether to address one or both requirements, and in what order, *id*.; the Court discusses both requirements below.

### *1. Violation of a Constitutional Right*

Plaintiff's claims have three elements: "(1) Plaintiff engaged in a protected activity, (2) [a] government official took adverse action against [him] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022) (cleaned up). Here, the Second Amended Complaint clearly alleges Plaintiff engaged in a protected activity. It is also reasonable to infer from Plaintiff's allegations that Defendants engaged in the actions ascribed to them (*e.g.*, Captain Gottstein's phone call and Sergeant Majors's

6

and Officer Kisse's visit to Plaintiff's house) because of his Twitter post.[4]  The Court's analysis focuses on the second element.

Whether an official's conduct is sufficient to "chill a person of ordinary firmness" calls for an objective inquiry.  *E.g., Bennie v. Munn*, 822 F.3d 392, 400 (8th Cir. 2016).  "In some cases, embarrassment, humiliation, and emotional distress may be sufficient to support a § 1983 claim.  But, it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."  *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (cleaned up); *see also Zutz v. Nelson*, 601 F.3d 842, 848-49 (8th Cir. 2010).

Three Eighth Circuit cases are particularly relevant to the Court's conclusion.  In *Naucke*, the plaintiff alleged public officials responded to her criticism by ridiculing and humiliating her in public and by spreading rumors about her.  The Eighth Circuit upheld the dismissal of this claim, explaining that comments may cause "embarrassment, humiliation and emotional distress" and yet still "be insufficient to deter a person of ordinary firmness from continuing to speak out."  *Id*.[5]  The Eighth Circuit differentiated *Naucke* in *Garcia v. City of Trenton*, 348 F.3d 726 (8th Cir. 2003), in which the plaintiff sued the Mayor of the City of Trenton, alleging the Mayor retaliated against the plaintiff by arranging for parking tickets to be issued to her in circumstances when others did not receive parking tickets.  In finding the Mayor's conduct violated plaintiff's First

---

[4] The obvious exception, of course, involves the actions of the officers who responded to Plaintiff's burglary call; the Second Amended Complaint does not allege Captain Gottstein, Sergeant Majors, or Officer Kissee responded to that call.  More importantly, those officers could not have taken actions based on Plaintiff's as-yet unposted video.

[5] Plaintiff argues *Naucke* can be distinguished because the plaintiff in *Naucke* continued speaking despite the alleged retaliation.  (*E.g.*, Doc. 17, p. 10.)  While true, this fact is not dispositive because, as stated earlier, the test is objective. *See Bennie*, 822 F.3d at 400 (cautioning against "the dangers of giving undue weight to how a particular plaintiff actually responded . . . .").  During the oral argument, Plaintiff suggested additional bases for distinguishing *Nauke*, but the Court finds they are not supported by the Eighth Circuit's description of the case.

7

Amendment rights, the Eighth Circuit found that, "in contrast to *Naucke*, defendant's conduct went beyond mere speech, however offensive. Defendant, in his capacity as Mayor, engaged the punitive machinery of government in order to punish Ms. Garcia for her speaking out." 348 F.3d at 729.

In *Scheffler v. Molin*, the defendant (a city official) "yelled at Scheffler, called him a 'criminal,' and accused him of living at the property [at issue] unlawfully." 743 F.3d 619, 620 (8th Cir. 2014). The city official escorted the plaintiff out of his office (placing his hands on plaintiff in the process) and instructed a subordinate to call the police. *Id*. The Eighth Circuit found the city official's conduct did not violate plaintiff's First Amendment rights and differentiated *Garcia* because the plaintiff there, unlike the plaintiff in *Scheffler*, suffered "concrete consequences." *Id*. at 622. The Eighth Circuit also described the conduct in *Naucke* as "more severe" and "far more persistent than the single instance of misconduct involved" in *Scheffler*. *Id*.

Here, the facts alleged do not suggest a person of ordinary firmness would have felt compelled to (1) take down a video critical of the police or (2) refrain from making other public statements about the police. Plaintiff posted a video criticizing the actions of the officers responding to his burglary report and requested "that the matter be brought to the attention of the right person in the Mayor's office or the KCPD to help him understand the inaction." (Doc. 8, ¶ 26.) Defendants responded to explain the situation. The alleged facts do not bring this case to the level of *Garcia*.

Plaintiff points to isolated phrases in Captain Gottstein's message, starting with his description of Plaintiff as "begging for attention," which he asserts was "designed to belittle Plaintiff's concerns and dissuade him from pressing the issue." (Doc. 17, p. 9.) He also perceives the statements that the KCPD could not "keep citizens safe" as a threat. (Doc. 17, p. 13.) However,

8

the voicemail should be considered in its entirety. Viewed in that light, Captain Gottstein's message identifies changes to the KCPD's practices in response to a recent court case and expresses his view (in agreement with Plaintiff's concern) that those changes impair the KCPD's ability to keep citizens safe. Captain Gottstein did not threaten to change the way the police responded to Plaintiff's calls specifically, nor did he make any other threats. He mentioned the video only to explain why he was calling, and did not discuss it at length or even ask Plaintiff to remove it. And while his characterization of Plaintiff as "begging" was arguably demeaning, it would not cause an ordinary person to fear reprisal or otherwise "chill" their inclination to engage in speech critical of the police.

Captain Gottstein also indicated he would have the responding officers' supervisor – a sergeant – contact Plaintiff that night, which explains Sergeant Major's appearance at Plaintiff's house. Sergeant Major was wearing a protective vest and was armed – as any police officer on duty might be. His hand was near his hip while he talked, but people frequently have their hands near their hips when they talk. Moreover, there is no allegation Sergeant Majors touched his gun, much less that he drew it. There is also no allegation Sergeant Majors threatened Plaintiff or his wife, said anything inappropriate, indicated the Twitter video should be removed, or (other than the allegations discussed above) acted in a threatening or inappropriate manner. The fact that the patrol car's lights were on is, under Eighth Circuit precedent, too insubstantial to factor into the analysis.[6]

---

[6] The Second Amended Complaint also alleges Plaintiff's Twitter video should have been treated as "an informal complaint analogous to a phone call" under the KCPD's practices and resulted simply in information directing him how to make a formal complaint. (Doc. 8, ¶ 38.) But Plaintiff's response to Defendants' Motion to Dismiss does not discuss this fact or explain how it affects the analysis. Plaintiff discussed the fact during oral argument but did not explain why Plaintiff's Twitter video qualified as an informal complaint or, more importantly, why Defendants' failure to treat it as such affects the constitutional analysis. There is no allegation or argument Plaintiff was aware of the policy or expected any particular process or form of response, so he could not have been affected by the purported

9

Thus, considered in concert (and in context), Defendants responded to Plaintiff's request for an explanation of the officers' response to his burglary call. They did so first by leaving a voicemail (which Defendants conceded during oral argument might be viewed as "snarky" and not the "most professional" of responses), explaining that the KCPD's policies had changed in a manner that would provide less protection to the public. Later (as indicated in the voicemail), two officers came to Plaintiff's house to talk to him personally. They wore gear typically worn by police officers and the lights on their patrol car had been activated. But significantly, Plaintiff does not allege anyone threatened his wife or him or even asked for the Twitter post to be taken down. These allegations are "so inconsequential that even allowing a claim 'would trivialize the First Amendment.'" *Bennie*, 822 F.3d at 398 n.2 (quoting *Naucke*, 284 F.3d at 928). The Court holds that, as a matter of law, these facts would not keep a person of ordinary firmness from engaging in First Amendment activity.

### 2. "Clearly Established"

Even if Defendants violated Plaintiff's rights, they are entitled to qualified immunity because they did not violate clearly established law. As Plaintiff points out, citizens have a First Amendment right to question and criticize government officials without reprisal. (Doc. 17, p. 13,) But when determining whether the law is clearly established, it must not be analyzed at a high level of generality. *E.g., Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014).

> A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate, and that precedent needs to be particularized to the facts of the case. To be clearly established, there needs to be prior cases that would have put a reasonable officer on notice.

---

failure to follow the policy. Moreover, a violation of policy is not necessarily a violation of the Constitution. *E.g., Christiansen v. Eral*, 52 F.4th 377, 379 (8th Cir. 2022); *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021).

10

*Furlow v. Belmar*, 52 F.4th 393, 404 (8th Cir. 2022) (cleaned up).

The Court refers to its analysis of the relevant cases in Part II.A.1, above. Plaintiff relies on *Garcia* as clearly establishing the wrongfulness of Defendants' conduct, but the Eighth Circuit has differentiated *Garcia* from other cases because in that case the plaintiff suffered "concrete consequences" in the form of tickets. *See Shefler*, 743 F.3d at 622. Here, there were no concrete consequences, so *Garcia* does not place the wrongfulness of Defendant's actions beyond debate. To the contrary, the case at bar is closer to *Shefler* and *Naucke* in that the conduct here is less egregious than the conduct in either case. In *Naucke*, the conduct was more persistent and more clearly designed to publicly embarrass and humiliate the plaintiff; in *Shefler*, the defendant accused the plaintiff of being a criminal and made physical contact with him. In both cases, the Eighth Circuit held there was no constitutional violation. Thus, the Court cannot conclude clearly established law demonstrates Defendants' conduct violated the Constitution.

If the Individual Defendants' conduct violated the Constitution, there is no existing precedent that would have clearly told them so. Therefore, they are entitled to qualified immunity.

### B. The Board

The Board argues it cannot be liable unless one of the Individual Defendants violated his rights. *See Mitchell v Dakota County Soc. Servs.*, 959 F.3d 887, 900 (8th Cir. 2020). During oral argument and in his response to the Motion to Dismiss, Plaintiff agreed with this proposition. (*See* Doc. 17, pp. 14-15.) The claims against the Board must be dismissed because the Court has held none of the Individual Defendants violated Plaintiff's rights.[7]

---

[7] This conclusion makes it unnecessary to consider whether the Second Amended Complaint adequately alleges the existence of an official policy, an unofficial custom, or a failure to train that constitutes deliberate indifference, one of which must be pleaded and proved for the Board to be liable. *E.g., Corwin v. City of Independence*, 829 F.3d 695, 699-700 (8th Cir. 2016).

## III. CONCLUSION

Defendants' Motion to Dismiss, (Doc. 12), is **GRANTED** and this case is **DISMISSED** for failure to state a claim.

**IT IS SO ORDERED.**

/s/ Beth Phillips<br>BETH PHILLIPS, CHIEF JUDGE<br>UNITED STATES DISTRICT COURT

DATE: March 13, 2023